Good morning, and may it please the Court, I'm Dominic Dre and with Doug Northup, I represent the appellants. This appeal turns on whether an Arizona agency rationally interpreted three words in a state statute under federal law. The only way to affirm the summary judgment below is to hold that rational basis requires states to treat a federal agency's deferment policy as if it were federal law, but that not only deprives Director Halachowski of any deference in his interpretation of state statutes. Well, wait a minute. It's a very strange form of deference to state statute when the state statute says under federal law, so he's therefore interpreting federal law, so why should he be getting any deference? He has deference because it's a term of art in state law that doesn't appear in federal law. If this were a provision like lawful status or something that's defined in federal law, then you're absolutely correct that he would not enjoy deference. But his interpretation here has been eminently rational because it follows Justice Ginsburg's decision in the Barclays Bank case, which specifically stated that executive branch communications expressing federal policy, quote, lack the force of law. And that's exactly what the DACA memorandum is. It's an expression of current federal policy, but it lacks the force of law because it's neither a statute nor a formal rulemaking nor a regulation. That's the holding in Barclays and in Mead and in Wyeth. The quotes are at page 28 of our opening brief, but the rule is simple. The position is that authorized federal law doesn't mean authorized under federal executive authority. That's correct. This is an administrative law question in the first instance, which is what constitutes federal law for the purpose of authorizing presence in the United States? What do you mean by whose administrative law? Our own administrative law? No, I think this is a question of federal administrative law in terms of... And that's why the director's interpretation is rational because it follows the Supreme Court's decisions on this. And in applying that rule, he held that taking OLC and DHS at their own words, this was not promulgated under a formal rulemaking, and it certainly isn't legislation. And so, although it may be an expression of current policy, it is not the force of law. And so, all EADs... That's true of all of the employment authorizations, right? No, ma'am. And that's an important fact about this case. But none... The employment authorizations... I'm just talking to the employment authorizations and the EADs. None of them are in the federal statute. None of them. No, they are authorized by the federal statute. Correct. And no specific one is in the federal statute? No, ma'am. Correct. That's correct. So, the question is whether they're authorized by the federal statute. And all of the other ones are. And that's why Director Halachowski interpreted the statute as he did. Only... What does the federal statute say about employment authorization? Well, what it says on each of those cases is that persons are permitted to remain in this country in spite of violations of federal immigration law if they meet any of these various criteria. I'm talking about the employment authorization. It doesn't speak to that, or at least it doesn't speak to that in the sections that go through each of these... And is this a general authorization that the Attorney General can authorize aliens to work? I believe that's correct, yes. And so that's exactly the distinction, is that the presence is authorized under federal statutes. And then the EADs are something wholly different. So what Director Halachowski is tasked with doing is mapping from these EADs, which people can present as evidence of presence, onto the underlying statutory question, which is, is their presence authorized under federal law? And that's where we look to the INA. And it's a perfect division that he has traced between the EADs, which suffice to establish authorized presence, and those which do not, principally the C-33. Can you tell me how somebody who is in... Now, these people are not in deportation, but some of them are in removal proceedings and most of them aren't, right? Yes. So the ones who aren't are, if they eventually were, they would have NTAs issued and they would... I mean, you can't just remove them the next day. You have to go through all the procedures, including the opportunity to apply for a leave. Right? So they're basically one stage behind the people who have applied for cancellation of removal, for example. Right? Oh, I see what you're saying. The DACA is your first... The DACA people. Right. Yes, that's right. And the... So how are the cancellation of removal people, how is their presence in any way tied... They're illegal. They don't belong here. They are in the process of being removed, which the DACA people are not, right? They are applying for purely discretionary relief, which even if they're eligible for, they may not... They probably won't get. I mean, very few people get cancellation. So how are they differently... What is the interest in treating them different? They are differently situated because their presence is authorized under the INA. In what way? I can give you the chapter in verse, but the INA expressly authorizes at 8 U.S.C. Section 1229B, this cancellation of removal procedure, and it allows them to remain in the United States during that process. It may be that those folks are... But these people are also allowed to remain in the process in the country until they're removed. By what? They're authorized by this sort of federal policy memorandum. No, excuse me. They are authorized just as the people applying for cancellation removal until they're removed. They're more or less authorized, right? The people who are in the process of being removed are only authorized in the sense that they're not removed yet. No, that's not correct. The INA allows those people to remain in the United States. Could you give me that section, please, that says that? 8 U.S.C. 1229B. And this is why, to return to the... I'm sorry? We're dealing with deferred action here. Yes, sir. For a limited period of time. Yes, that's right. And immediately revocable. That's also in the OLC's memorandum. And for these reasons, these groups are not similarly situated, so judgment was incorrect below and... You're not challenging... No, no. That's a great clarification as well, because the other slide makes it sound like that's our objective, and it's not. The question is whether this is a lawful exercise of deferred action. So let's move to the second round. Could you just tell me again what section of 1229B you're talking about? I don't have anything beyond that at my notes right now, but I could see if I can find a more precise... There's nothing in here that says anything about them staying in the meanwhile, except in the sense that nobody is removed until they're removed. Yes, and so their status in the meantime, that is, they're being on this process, whether it's fruitful or not, they are engaged in something authorized under the INA. So they have relief provided by the statute itself. Well, I'm just not seeing where that relief is, until they get it. Okay. In any event, their process, at least, is authorized under the INA. But the DACA people also are not going to get... You say it could be revoked at any time, but they're not going to get removed immediately. They still have to go through the whole process, the same process. The likelihood or potential for removal is not what determines someone's authorization under federal law. It's whether it traces to the INA or formal rulemaking. And even... So the DACA memorandum from 2012 is neither of those things. And if it were, even if it did have the force of law, such that it would somehow trigger the provision in the Arizona statute, that law would be unconstitutional. And it would be because Congress has to act in order to create immigration...  Yes, Judge. Now, DACA recipients have had driver's licenses issued to them since, what, December 2014? Since the injunction? Yes. Since the injunction. Now, what negative repercussions has Arizona suffered because of that issuance of those licenses? I don't know the answer to that, Your Honor, and it certainly is not in the record. The state is not obliged to... Well, you know, my office has checked it out, and there have been none. Well, that's a rather categorical statement. I'm sure your clerks are ace clerks, Judge, and they've done a good job of researching... And it's not hard to do. It's certainly outside of the record. All you've got to do is go online, check all the newspapers, and see if there are any articles. You can do that in about three or four minutes. There are no... I'm sure that their efforts have been thorough, but that is outside the record. And anyway, to get this license, DACA recipients, they have to put up insurance, right? I'm not sure about the... That's absolutely correct. You know all these other questions, you don't know that? I mean, we're living in the real world. Judge, we are in the real world, but we are in a very strange corner of it of administrative and separation of powers law, which doesn't hinge on whether these have had negative externalities of the sort that you identified. That all depends on how you want to read it. So, anyway... Asking the federal separation of powers question. Yes, Judge. I mean, on one level, I think something like this was sort of kicking around in your defense all along. But the exact argument you're making now depends largely, as I understand it, on the question of... I mean, as to the authority to do this, on the... whether it's discretionary or not. And for that, we don't have a record because you never raised it before. So, we have traced out in the reply brief, and I won't expend time on it, the many places where this was argued below. I'm saying you may have argued something like it, but you didn't argue the precise issue insofar as it turns on whether this is a class distinction or one that allows case-by-case discretion. And that seems to be where you are now, and that requires a record. For the record, you're looking at the Texas record. We definitely cite the Texas order. But let me give two other points that I think will be helpful here. At page 469-470 of the record, we include testimony from Secretary Napolitano and statistics about the processing of applications for DACA that demonstrate that they're being granted at an impossibly high rate that at least raises a fact question that the lower court should have considered. We also had an evidentiary... You can ask it to consider it. We also had... And we have considered it. And I believe he did consider it, in fact. But let me identify one other point, which is defendants attempted to propound subpoenas on DHS and USCIS and plaintiffs opposed successfully, and the lower court quashed those subpoenas, which would have allowed us to do precisely the discovery that Your Honor suggests would be helpful. But at that point, it wasn't really connected to an argument you were making, but now it's central to an argument you're making. No, no. It was involved in our argument. We presented it at every stage of the summary judgment proceeding. What did you present? What's the wings? Let me call your attention to record 317 and 18, where our summary judgment briefs discuss this. The other side opposed it. It's at 597, which is a great read. Unfortunately, it's filed under seal, so I don't want to break any rules and quote it here in court. But their description of our argument, the central word starts with a B, and it is totally incompatible with the idea that we waived. And then in the summary judgment hearing, the court heard argument on this, excerpts 543 through 44, our reply brief 546 through 47, and then the court ruled on it ultimately at pages 16 and 17 of the record. So this was before the court. I don't think the court thought it was very viable, and so we didn't engage in the discovery on this topic, nor do I think this court needs that kind of discovery, because there's no congressional authorization. We're clearly in the third category under the Youngstown precedent, because Congress has spoken on this topic. Did you mention the word Youngstown in your briefs earlier in the district court? I'm not sure, Judge. But I know that we now have made it abundantly clear, and the precedent is equally clear, including that Barclays decision that I mentioned before. Isn't right now there, as I understand it, there's a Northern District of Georgia case that specifically says that it is discretionary, and there's the Fifth Circuit case that doesn't say it isn't. Well, I think the Fifth Circuit, it's actually not the Fifth Circuit, it's the Northern District of Texas. I think it does say that it is non-discretionary. I thought there was also a Northern District of Georgia case. I'm not familiar with that one, Judge, but that wouldn't necessarily change that analysis. At the very least, what happens in this case, I think, on the constitutionality point would be a remand for very narrow discovery on the topic of whether DACA operates on a case-by-case basis or not. And this is what we requested in the court below and plaintiffs opposed. So for either of these two reasons, it was incorrect for the lower court to deny the defendant's motion for summary judgment because these groups are not similarly situated in terms of the authority under which their presence in the United States is authorized. It's interesting because the similarly situated, according to the case law, is kind of to set up the equal protection argument. It's not the equal protection argument. And as I understand it, it basically says, are they similarly situated in some respects so that there is a distinction, but not in the way that the distinction is being drawn? And then the question is, is that distinction a viable distinction under the equal protection clause? So you can't prove that they're not similarly situated by demonstrating the very distinctions that you're drawing because those are the ones you have to justify. Yes, and the distinction in this case is a distinction not about the EADs themselves, but about their authorizations. And so I think it is a related, but ultimately separate and primary basis for our dissimilar situation in this case. With that, I really need to reserve my time. But the distinctions you're, ultimately, I guess this is my really key question. Don't the equal protection and preemption arguments here, even though the preemption argument, I understand, have such a big appeal. But in essence, it collapses into the equal protection argument because both in terms of how we review it and what the viable interests are, to the degree you're relying on interests which are really for the federal government, not for the states to worry about. They're not legitimate state interests. And I don't see how you can sidestep that by, through the similarly situated analysis. It's not an attempt to sidestep because, as Your Honor said, that's a preliminary feature. It has to be done before we ever look at state interest. But what has to be done? It has to be shown that there is some way in which they're similarly situated. And there are some ways in which they aren't. In all material respects. That's what the law says. With that, Your Honor, I really must reserve my time. Thank you. Counsel, I have questions. Excuse me. Oh, yes. Okay. I have a few questions. Your opening brief argued that the discovery has changed things since the time of the preliminary injunction in a way that should change the outcome, but you didn't tell us what the discovery is that we should be looking to. Okay. I believe there are many examples in the reply brief, but I can give some other ones. We have additional testimony. Well, your opening brief, I was referring specifically, your opening brief makes this claim repeatedly but doesn't cite to anything. So is it the reply brief I need to look to? I would suggest the reply brief. Yes, Your Honor. I think that was largely... Well, now's your chance. So now's your chance. So I'll just write them down, please. Okay. Well, there are record excerpts for two new depositions from Director Halachowski, one from Mr. Adkins, who was the 30B6 designee for the governor, and let's see, testimony from Stacey Stanton, the assistant director. You can find many of these... Okay, those I've read. Those I've read. How do they change anything? All of these witnesses testify to the rational basis. So for one thing, this conversation only kicks in if we have rejected the idea that these groups are dissimilarly situated, and it assumes that the lower court did not already err in applying the wrong standard of review, which it did. But what these do is they corroborate an additional evidence explaining the same rational basis is certainly valid to consider as a new record on appeal, certainly between the preliminary injunction and the summary judgment stage. Moreover... These issues that you're raising here today that we're discussing, were they all raised before the district judge? Yes, Your Honor. Every one of them? Yes, sir. The constitutional issues? Especially that one. And that's the one that I was sort of surprised to see the waiver point from the other side, but we traced out in the reply brief the many ways in which that was preserved. And did the district judge rule on it? Yes, he did. That's at 16 and 17 of the excerpts of record. He also, in the hearing transcript, which I had in front of me a moment ago, but he also ruled on it there, where it comes up at excerpts 543 through 44. And were those issues briefed before us at our earlier hearings? No, they are new to you. They are new to us. They are new to you, sir, and that's another reason that the previous case does not control this one, is that this includes new arguments. They are new to us, but if they were raised below... Well, they were raised below at the summary judgment stage. I don't like the word below. They were raised before the district court. The district court is really the top tier of the whole federal judiciary because that's where the power lies. Do you understand that? Yes, sir. I understand that because I'm a district judge. I can certainly relate to that in this case. You've got to learn that. And it wasn't raised before the district judge. It was, yes, yes, yes. It was raised before the first time before us today. Yes, that's correct. So it wasn't part of the preliminary... Hasn't that issue been weighed? No. You've got to raise these issues before us. Not before you, but last time you were ruling on the preliminary injunction and nothing says that we can't make new arguments at the summary judgment stage. Let me, just to be clear about this. I mean, in a way, this is, you know, to my mind, all the other reasons you've been given are not really your reasons. This is really your reason. You think that this is an illegitimate executive order. And so, but the question is, to what degree does... I sort of asked this before, but do you really want us to look at the Texas record? We can't do that, right? Oh, I disagree with that. For one thing, you can take judicial notice of it. We're not in that case. How can we collaterally stop it from something that happened in Texas? Well, it's the United States actions that are issued in that case. So it doesn't implicate anything that these plaintiffs may have said or done. But if there are findings or if they're even in the record, they might have made a different record if they had the chance. So we can't bind them by what happened in Texas. So then the question is, what are you suggesting? That there's an adequate record now or that you should get a new chance to make a record or what? Yes, I believe there's an adequate record already in this case. And if the court disagrees with that, it would be a very simple remand for further development. And we could finally proceed with the discovery that we did try to take on this very topic. Your time's up. Yes, Your Honor. It is. With the court's permission, may I request a few minutes for rebuttal?  Two minutes, if you want. Thank you, sir. Thank you. May it please the court. At issue is Arizona's discriminatory... Try to keep your voice up. Are the microphones working okay? All right. Okay. I will just wave at me if it's loud enough, sir. The acoustics in this room are terrible. Okay. Yeah. At issue is Arizona's discriminatory policy of denying driver's licenses to DACA recipients while allowing other non-citizens with temporary federal authorization to be in the country to receive licenses. This court previously considered this issue, and after a full factual development of the record, there's nothing new here that should alter this court's conclusion that Arizona's policy violates equal protection and cannot stand. Arizona's policy is not only an outlier nationally. Arizona is now the only state that does not voluntarily provide driver's licenses to DACA recipients. Critically, for equal protection analysis, Arizona's exclusion of DACA recipients from driver's licenses is also an outlier with respect to how the state treats other non-citizens that have temporary permission to live and work in the United States, singling out DACA recipients for discriminatory treatment. Arizona... Let's see if we can... Can we raise the volume on this one? It's so rare that people say I'm not loud enough. No, no. It's... It is a true rarity, sir. I think Frank should explain if he has a particular comment. Those mics actually do. I can pose you up to the mic. They just record for posterity, you know. And posterity is still asleep, so... Maybe if you stay between the two. Oh, there's two now. Maybe you could... Okay. All right, let's try that, Your Honor. That's good. All right. Now we're ready. Arizona's argument that its policy is not discriminatory and should be allowed to stand can basically reduce to two main premises. First, in the eyes of Arizona, DACA recipients are not similarly situated to other non-citizens with temporary permission from the federal government to be in the country... And their not similarly situated argument is based on federal law... Their federal law representations. Is that their problem? I mean, in other words, does the equal protection issue back out either at the similarly situated stage and at the justification stage interests that are really federal government interests? Are they not legitimate state interests? Well, let me try to answer that question two ways, because I think you posed it both as a similarly situated analysis, Your Honor, as well as a Crawford state interest. As to the similarly situated analysis, I would agree that Arizona's central problem here is they have tried to argue that individuals are not similarly authorized under federal law, but based on their own state-created, state-devised, criteria that is unmoored from federal guidance and federal statute. And that is a central problem with that, Pete. With respect to are they legitimate state interests, I think whether or not a state can face liability is a legitimate state interest. The issue is they still haven't... Yes, but insofar as legitimate state interests are... I mean, the case law on equal protection with regard to aliens is very interesting, because it does seem to draw a distinction between what the states can do and what the federal government can do, and even maybe some sort of slightly heightened standard of review for that reason, that the interests have to be substantial state interests, not just interests. And so backing... So the hard part for me here is once you get to the interest section, then it's easy to say we need state interests, not federal interests. But what about the similarly situated states? I mean, is this sort of where the preemption-like issues that you aren't exactly raising, but we're in Judge Christian's concurrence and the federal government's amicus brief are kind of at the core of that piece? Is that really what's happening here? I think they are, Your Honor. And part of it has to do with the way in which Arizona has chosen to argue similarly situated. They have said, you, the court, should give deference to the director of the Arizona Department of Transportation. You should give him deference on how he interprets whose presence is authorized under federal law. And yes, state statutes get a generalized notion of deference given to state agency interpretations. But that's not applicable here for at least three reasons. First, the ADOT director is not entitled to deference with respect to authorized under federal law because he's not an immigration expert. He is a transportation expert. He's an expert in the issuance of licenses, not in the determination of whose presence is authorized and whose is not. Second, even if there still was some kind of deference that was due to the agency, even Arizona state law cases make clear that when there's a constitutional violation in that interpretation, no deference is due. Last, Arizona cases also make clear that there's no deference due to an agency's interpretation of a state statute unless it's a long-standing interpretation. And certainly you don't get deference for criteria created in the course of litigation. I mean, these are all federal immigration issues. And that's the exclusive domain of the federal government. That's correct, Your Honor. The state wants to enjoy a prerogative that it simply does not have. In this case, the state wants to have the prerogative to decide who's authorized to be here and who is not. Counsel, if I might... Counsel, if I might, this is why there's begs of preemption analysis, it seems to me. And the record is now pretty schizophrenic about what your position is on preemption, if I might. And I don't mean to be disrespectful, but I am struggling to figure out what you're doing here. Because we have the DOJ analysis, right? And that's certainly not a secret. It's right out there, filed in the public record. There was a brief filed by your team in the district court that dropped the footnote asking the district court to rule on preemption, if it didn't rule in your favor on equal protection. And then I think that's the last we heard of it. Is that right? That's right, Your Honor. We did not formally cross-appeal the preemption issue here. Would you have to cross-appeal it? No. No, Your Honor. I think the court enjoys, of course, the ability to affirm the judgment from the district court. Which is a little peculiar. I'm happy to, of course. The preemption arguments of the court would be so nice. Are you certain one of us has to cross-appeal? Well, there's at least one of us that wants to hear about preemption pretty clearly. So I would really appreciate it. I just think it is absolutely intertwined for the reasons Judge Berzon is suggesting. And I can't imagine how we could separate them. So if you could speak to that, I'd really appreciate it. Yeah, happily. So our preemption argument is essentially what we've just been talking about, right? Our key preemption argument, as you wrote in your concurrence, Judge, is that there is a conflict here between what the state is trying to do and the clear congressional intent for individuals who have been granted DACA to be able to live in... Actually, that isn't what she wrote. What she wrote is that there was a field preemption because the authority to make those decisions is actually with the federal government. And this is why we had a problem knowing whether you'd raised that argument before. And there's a difference between saying that they are making a decision that's in conflict with the one made by the federal government and saying that whatever... Whether it's in conflict or isn't in conflict, they can't do it. So which one... And which of those matters for present purposes? Which of those for the similarly situated argument? And I do think it's embedded. But which one is embedded? Or are both of them embedded? I think they're both embedded, Your Honor. And you're right, of course, that we have both a conflict preemption as well as a regulation of immigration argument. The regulation of immigration argument, of course, derives from the notion that the federal government has exclusive authority to decide who is authorized to work in this country. And in fact, as this court pointed to in its prior preliminary injunction decision, by statute, in terms of defining who's unauthorized to work, the statute specifically restricts the ability of the attorney general to grant that work authorization to individuals. And so certainly we believe in what we argued originally with our regulation of preemption argument is the federal government has occupied the field here with respect to... We do that all... And the federal government does that all the time with different classes and groups of people. You've got certain skills and you've got a lot of money in your pocket, you can come in here. And those are... That's part of it. It is, absolutely, Your Honor. And the state can't decide, say, well, you don't have enough money in your pocket so you can't come to Arizona. That's right. Or Nevada. That's right. And what we're seeing, of course, is a state disagreement with the federal government's policy decision in terms of who is authorized. Let me answer, I think. Suppose, instead of the statute, the statute says that people who are admitted... who are allowed to stay in the country temporarily under the DACA executive order can't get a driver's license. Instead, it's directly. Would that be the same or a different problem? Let me just repeat back to make sure I understood it, Your Honor. Are you saying if Arizona's statute with respect to licensing said DACA recipients are excluded? Right. That would be, of course, an entirely separate analysis. I think we might still maintain that there are some equal protection problems there from what Your Honor was pointing to earlier with respect to... But it wouldn't be a preemption problem, would it, Counsel? Just stop right there. It wouldn't be a preemption problem, would it? Then it would just be maybe an equal protection problem. That is correct, Your Honor. Okay, so fundamentally the problem here is the state didn't adopt, did not borrow a federal classification. It made a new one. And that's where they crossed the line into the preemption world, right? You haven't abandoned that argument, have you? That's what I'm really trying to ferret out here. Your Honor, we have certainly not abandoned the argument that the classification scheme that the state has created, which is the exclusive domain of the federal government, is a preemption problem. And certainly one of the reasons why it's heightened here is because the statute itself refers to authorized under federal law. That gives us a unique preemption problem. Can you talk a little bit about their constitutional Youngstown defense? It certainly, it seems to me that an honest view of the history of those cases, this is what was always bothering them. You even said their problem was they disagreed with the, at the very outset, the problem was that they disagreed with the authority of the president to do this. They've been sort of, a lot of their arguments have tried to walk away from the fact that that's what their problem is, but in other points it's been pretty clear that that's what their problem is. So what's been waived exactly? Well, thank you for that opportunity, Your Honor. And I think there's a few points to clear up with respect to the questions about the constitutionality of the DACA program or the DACA program's legality. I think there's four central points that the court should keep in mind. I'd like to lay them out briefly and then I'll go through each one in turn if the court is interested. So first, as we address in our brief, it's not necessary for the court to address the question of the constitutionality of the DACA program and whether it impacts the similarly situated analysis. That was waived because it clearly wasn't argued below. And I'll get to the specific portions of the record that Mr. Dre pointed out in a minute. Secondly, I want to clear up any confusion with respect to what's the case law out there with respect to the DACA program. There were some references to that. The fact of the matter is, all the cases that are challenging the program at issue here, original DACA, or as some folks call it, DACA 1.0, have been dismissed on standing or jurisdictional grounds. So we have two cases of interest. One is the Crane case that I think Your Honor was referencing earlier. That case was in the Fifth Circuit just yesterday on Blomquist and Ives. The Crane case is also the case in which the panel of the Fifth Circuit made a very clear statement that DACA is not a categorical granting of prosecutorial discretion, but is rather individualized case-by-case discretion. The second case that even raises any type of challenges to the original DACA program is a case brought by Sheriff Arpaio in the D.C. District Court. It's now up on appeal before the D.C. Circuit. It was, in the District Court, dismissed on standing basis. So that's original DACA. A lot of what's cited to a lot of what's discussed has been the Texas v. USA case. Now, Arizona's a plaintiff in that case. That's a nexus. But that case specifically does not challenge the program at issue here, the original DACA program. But it did rely on the history of that program in order, or at least the  in order to demonstrate that the purported discretion is not actually exercised as discretion. It did, and I think there's some reference earlier in the discussion that this is a hotly contested record in that case, as it's now up on appeal. One of the questions that has been raised is whether or not the District Court ignored competing evidence. And so our argument as to waiver, which I think is where the court started, is what was argued below, and yes, it was always bothering Arizona, that they had qualms about the in a very specific statutory context. They raised them in the context of 8 U.S.C. 1225b. Now, that's tied to the Crane case that we were discussing earlier, and that's been summarily rejected. Words like separation of powers, Youngstown constitutionality, those were never written or uttered below, and they're certainly not in the District Court's opinion. So to say that the District Court has considered and addressed this is simply not true. So you're saying that they were raising it as a statutory argument, not as a constitutional argument. Is that essentially what you're saying? Yes, Your Honor, we are. The Crane was essentially about the assertion that because the statute said you have to, something like if you encounter somebody who's legally you're supposed to prosecute them, then that means you have to prosecute them. Right. It's something like having to do with quote-unquote arriving aliens, and there is some mandatory language in there, something about shall initiate a notice to appear or initiate removal proceedings, but as the Crane Court found, no one can test the fact that even if that statute applied to DACA recipients, which is dubious, that the government absolutely has the authority to then turn around and exercise its prosecutorial discretion and close those proceedings and grant more prosecution. But the fact question, I mean, the main reason for not reaching this now would be that it turns on fact. And that fact question does seem to overlap with what they were trying to get discovery on with regard to the Crane argument. Great. So two responses to that, Your Honor, if I may. One is I would point the court to the transcript of the summary judgment hearing in the district court, specifically page 21, and the court asked, do I have to find that the DACA program is legally illegitimate in order to rule your way? And then the response is all a statutory argument, so we think that's quite elucidating. With respect to, is this a fact question? The way the state has chosen to argue it, they've put facts at issue. That's why you see our waiver argument. However, I'd also like to I don't understand that. Can you say it again? Of course. The state has chosen when trying to mount this constitutional argument to the original DACA program to try to put facts at issue by saying, look, here's the evidence of the case. We say it's a very high grant rate. We say that it's not individualized case by case discretion, and so they're raising now, for the first time, actually, that there are contested material issues of facts, whereas previously in the district court proceedings below, they had argued with respect to some ways situated that there's no disputed questions of the fact that the court needed to consider. So it is a little jarring, and that's why we have a waiver argument that they're now maintaining there are facts that the district court failed to look at when they in fact instructed the district court that there were no material disputed facts with respect to similarly situated. Does that clear it up, Your Honor? Yes. I'm just wondering did they say there was material facts in dispute about anything? Did they say there were no material Right. That's a good point, Your Honor. So their motion was only with respect to similarly situated. Right? Their summary judgment of motion. So they did say that there were disputed facts with respect to the rational basis that would require trial. I did want to address briefly the point that we think in terms of if the court felt like it needed to address the constitutionality of DACA, that that is a question that can be addressed without factual, or rather looking into the facts. And the reason for that is we think that there are numerous reasons that show the DACA program is fully legal. Everything that comes from the text of the Immigration and Nationality Act, the structure of that act, the history of the use of prosecutorial discretion, both to target individuals and also groups of... So do you, I mean you're saying essentially it doesn't matter whether it was discretionary or discretionary or non-discretionary. It's fine. It purported to be discretionary. It did purport to be discretionary. That's correct, Your Honor. We believe that it is an exercise of individual case-by-case discretion. However, we don't think it matters. We think that the executive has the ability to create the DACA program and that there are numerous benchmarks to make that very clear. And we're doing it in other areas. There are certain hardship areas and we have all kinds of policies that we operate under where we grant people exemption from these restrictions. We're doing it by the hundreds every day in this country. Right, and I think that's something that this court no doubt sees in its caseload. And I think that what it really raises is the far-reaching implications of the argument that the state is putting forward here. If their view of the Youngstown analysis is correct, it would have far-reaching consequences for numerous other types of prosecutorial discretion that's exercised by the immigration agency on a regular basis. Have you looked at, I mean, the BIA, for example, with regards to particularly serious crime and cancellation of removal and things like that, and even asylum, at the discretionary level does sort of lay out rules of thumb all the time, which are fairly much binding, because otherwise you have complete disuniformity. So, for example, my understanding is that a drug crime is pretty much always a particularly serious crime, no matter what it is, even though it's supposed to be discretionary. So it seems like it's the same problem that keeps recurring, i.e., otherwise the central body has no authority to run its agency. Your Honor, I think that there's a difference between laying out criteria. The DACA memo itself, it targets specific kinds of individuals, but it doesn't then take away all agency line-level review discretion. Just because you've targeted this and said, we think you may be eligible for prosecutorial discretion. It would be fairly disturbing if somebody happens to run into some particular INS personnel who says, well, I understand you meet all the criteria, but I think that you haven't done very well in school, so I'm not going to give you a DACA. Could you do that? Yes. You graduated, but you got all Ds. Yes, Your Honor, they can, and they have, and it is disturbing. But it's actually extremely important, because it goes to the nature of prosecutorial discretion, which is that decision, even if you meet all the criteria in the DACA memo, but when reviewing your file, the USCIS agent says, I'm exercising my discretion to deny you. That's unreviewable. And in fact, even by statute... I hope it wouldn't be. It would seem to me awfully strange that the agency, that individual, I mean, when you say there has to be discretion, I don't know why you're saying there has to be discretion of individual INS agencies, as opposed to the agency. Right. I was focusing on that point of adjudication when you're looking at the file and the individual agent, but I certainly would agree that the agency enjoys... I might phrase it differently, Your Honor, I might call it prioritization. Indeed, I think Congress has, in fact, by statute mandated the agency to prioritize among who it removes and who it doesn't, and I think that is, in essence, giving the agency that kind of discretion in its removal decisions and on the side that we're discussing with respect to the decisions of who it gives temporary permission to live and work to. Well, now, if you have a young person who's eligible for relief, a doctor, is each of those candidates their situation reviewed separately? Yes. Yes, sir. So, if you have a young person who has a big problem with the law, then let's assume that that person would not enjoy the benefits of doctors. There was a good reason for it. So it's not like they're just saying, well, what they're saying is, well, we're looking at this group of people. They've lived in this country for a long, long time. They're part of our culture. They've gone to our schools. They've made contributions. Now, we're going to we're going to grant them the ability here to say they're here legally. If they're working, they can go ahead and sign up for Social Security, right? Pay into that. And so they can get to work, we're going to say that they're entitled to have a driver's license. And you can't discriminate against them on that basis. Because if you don't have a driver's license in certain areas of this country, you're going to have a tough time finding a job. And so bottom line is there's individual consideration of each eligible person who seeks the benefits of DACA. I guess that's a terrible thing. No, that's right, Your Honor. The bottom line is there is individualized determination of each individual who seeks DACA. And then I would say the other bottom line that your point was raising really is, and I know I'm out of time, so I want to make sure Judge Christian doesn't have any questions today. I'm not great with the video. I will. You can be assured that I will, but go right ahead. The inescapable conclusion of this case is about discrimination, fair and simple. The fact that Arizona disagrees with the federal government's policy choice doesn't give Arizona its own license to discriminate. Your Honor asked earlier if there were any negative consequences of licensing immigrant youth DACA to drive in the state of Arizona. There is no negative   The fact that Arizona disagrees with the federal government and really, you know, as this Court previously found, what there really is here is this policy, which was denying immigrant youth the ability to drive, was affecting myriad harm on the state and on the youth. We would submit that for all the other reasons we've discussed today that the Court should affirm the District Court's decision and maintain a permanent injunction. And Judge Christian, I'd like to answer any last questions that you have. Yes, thank you. Opposing counsel said earlier that he thinks you dropped Bramson, and he's getting ready to get up. I mean, I would bet my house he's getting ready to get up and tell me that Bramson's not appropriately before this Court and we should not reach it. What is your response, please? My response to that is that the Court enjoys the ability to affirm on any basis that's in the record, and certainly the preemption questions don't require additional deposition. They don't require fact discovery more than has been done, and the Court has what it needs to make that determination if it wishes to. Even though there's no cross-appeal? Even though there's no cross-appeal. Are you familiar with Unlooping Pipeline Company versus City of Seattle? I am not, Your Honor. Okay, fair enough. So I'll just skip right past that then. May I ask whether the federal government has been asked to intervene? Was there ever any question of the federal government intervening here? No. We certainly never asked the federal government to intervene, nor did they indicate a desire to. All right. Earlier we invited the federal government to weigh in at the PFREB stage. If we go forward with Youngstown briefing or any other briefing, should we give the federal government the same opportunity now? Your Honor, I think that the federal government has briefed those issues extensively in the Texas case and in the Arpaio case, now before the D.C. Circuit, and those would be a... Wait a minute. I'm very surprised to hear you tell me you think we ought to be looking to the Texas case. Is that really what you want us to do? No, Your Honor, I don't. I just... If the Court wants the United States' opinion on this matter, of course the Court can speak to that. All I was saying is that the United States has certainly given its position on the expanded DACA program, so... Because the Texas case really speaks to what I'll call DACA 2. It's a different program, so I don't know that we really have the federal government's position on this at all, do we? Only to the extent that it's reached in the Arpaio case, which is in D.C. That did challenge both DACA 1 and DACA 2. Right. Okay. Thank you very much. It didn't reach the merits of anything. Absolutely not. It did not. The rule on standing is correct. Okay. Thank you very much. Thank you. Say that again. What did you just say? Judge Berzon was asking if the D.C. District Court case that includes the challenge to original DACA as well as expanded DACA did ever address the merits, which it didn't. It was a motion to dismiss ruling, and it was granted, so it only ruled on standing. Thank you. Got it. All right. Well, I don't want to urge Kristen to lose her house, so let me begin by saying the preemption was not raised... I feel it's secure. It was a very safe bet on your part, Jim. Why is she wrong? Well... Sorry. I'm a little louder still even, so let me in. Okay. This issue has never been briefed. If a party doesn't raise something in their opening briefs, it can't be raised on reply, and it certainly can't be raised at oral argument. If the Court wants to talk about preemption, I'd be happy to engage in supplemental briefing about that, but that would be the correct avenue so that we can discuss what remains in this case and what the law is. It does seem to me that there's a direct... Given the case law, Plyharris v. Doe and Nyquist and others, and Matthews and all of those cases, which seem to regard the... As I see it, that the equal protection argument in the immigration context has a healthy overlap with preemption-like considerations because there are interests which are not legitimate interests with regard to the state if they are really the interests of the federal government. That's correct. And so one of the questions that you asked opposing counsel that I was going to answer myself is, how do we separate or disentangle these equal protection and preemption points? If you look at those cases carefully, the places where they say that states don't have the authority to classify, it's talking about, with respect to immigration, the actual who's admitted to the country sort of decision and what visas will we give. Arizona's not trying to run a parallel... Counsel, some of those cases are talking about in-state tuition. Some of those cases are talking about housing benefits. They're just borrowing that from a lawyer and which kids go to school. They're not talking about immigration as such. To the extent that they are focusing on equal protection, those cases apply rational basis or order rational basis... Well, they use language like substantial interest and it seems to me that they're bumping up some. I mean, maybe it's kind of what's sometimes called rational basis with teeth or a heightened scrutiny which isn't necessarily in any particular place in the hierarchy because of the sort of presumptive lack of a state interest in the various divisions within alienage, for example. That's certainly what happened in Filer. And Filer is an interesting case because it traces out and says that classifications by a state within the universe of non-citizens are not suspect classifications. There's no escaping that holding. But then it goes ahead and does a rational basis plus sort of analysis. What about Nyquist? Nyquist predates Filer. So Filer supersedes Nyquist. So? So the clarity with which Filer addressed this issue plus the fact that if Nyquist says anything to the contrary, it's been overruled by Filer. But it doesn't say anything to the contrary. So we're going to have rational basis, rational basis plus. Is that what you're telling me? Oh, I actually think the other side's credit. They ask for strict scrutiny in this. I think the choice is either rational basis in the traditional sense or outright strict scrutiny. And really why? Because the Graham decision, which examines the classification between all citizens and authorized aliens on the one hand and unauthorized aliens on the other triggers. I understand. Those are the cases. That was Filer. That gets you rational basis. If you put citizens on the opposite side of all citizens, you get strict scrutiny. And so I think those are really your choices because otherwise, and think about what the choice to which this puts the Arizona legislature. Now you're in a situation if rational basis doesn't apply, but we know that a Filer-like classification triggers only rational basis because it's not strict scrutiny. You have to do all or nothing. But can your rational basis be based on your view of the distinction between federal categories of aliens? I'm glad that Your Honor asked about that because this is... Rational basis can be based almost on anything. Well, that's certainly true. But it has to be a legitimate statement. It's meaningless. Absolutely meaningless. Your word's not mine, Judge, but in this case... They've made arguments that the bullet points that you've listed in your rational basis are not plausible. At the very least, what we have there is a factual dispute about the plausibility and because only the plaintiffs move for summary judgment on the rational basis point, that would be another reason for remand. I would like to hear a plausible reason for treating the cancellation people differently. What's your strongest? I'm sorry? Oh, the strongest... I mean, I'll focus on the two that were not before this court last time around that the director Halachowski's interest in complying with state law, which touches on the previous discussion about similar situations. But that is an interest and this is what I'm saying. That is an interest in having the state law definition of authorized by federal law upheld, which isn't a... which then runs into the suggestion that that's not a legitimate state interest because it's an interpretation and it's the authority to define federal law, as Judge Christian said in her concurrence. Right. The state law has actually not been challenged in this case. Plaintiffs did not allege that the state statute... I understand that, but it's still an interest in a state law which turns on federal law. So what kind of an interest is that? That's a perfectly legitimate interest. The state law governs the state function, issuing driver's licenses. That's a field that the federal government has left alone to sort of reach the touch point between equal protection and preemption in this case. But it's not a touch... but that's a false premise because they were very clear in saying that they're not alleging that the federal government is trying to preempt the field of Arizona driver's licenses. This really has to do with classification, right? They've been clear about that. Yes, yes. I mean, I'm happy to talk about the classification of the equal protection sense. I don't know what the position is on preemption, Your Honor. But in the equal protection sense, you need to have a legitimate state interest in determining what the federal... and also it has to have something to do with driver's licenses, right? You can't just have some abstract interest. It has to be relevant to what you're doing. I think that the interest on the Director's part in complying with the state law that he's taken an oath to follow is a legitimate interest. Well, so then the state law has a problem. That doesn't matter for our purposes. Correct. Exactly. So maybe that's another lawsuit. Why is there another lawsuit? I'm sorry. Why is there another lawsuit? They're challenging the statute. That's what they're doing. No, they're not. They're not. That's important. Well, as applied to this, they're challenging it. They're challenging the Director's... The thing that's at issue is Director Halachowski's reading of the statute, whether he rationally interpreted... Let me talk about that for a minute. For some reason that I don't understand, you care a lot about whether it was the Director or the Governor who made this decision. It seems quite obvious that... The Governor said she made the decision. In the executive order, it says driver's licenses. It doesn't say you have discretion about driver's licenses. It says driver's licenses. Oh, no, Judge. This is a great point about why subsequent discovery has been important in this case and the earlier decisions... Doesn't the executive order just not order people to not give them... It makes no such order. It makes no such order. Let me ask you this. The federal government... It is limited... I'm sorry, Judge. The federal government in the United States of America has said that these folks fall within that act, whatever you want to call it. It's not an act. I know it's not an act. And as soon as I said it, I was sorry I said it. Okay? It's just a good... We've got so many acronyms around here. I get tired of them. But these young people that live in Arizona that are not citizens, but they've lived there since they were kids, and the federal government has said, you're here legally now. We're considering you to be legal... Just let me finish. We're considering you to be in this country legally. You can get your... You can sign up for Social Security. Right? And we... Now, this is not just a blanket thing. Each one is individually evaluated. Now, we know, at least I know, just checking it out, that no horrible things have happened on the highways of Arizona since this went into effect. No young person has had the benefit of this, has gone out, killed somebody as a drunk driver, or anything like that. And so what is the truth? Does it come down to racism? Does it come down to discrimination against these people? What else does it come down to? Judge, I wish you wouldn't say things like that. I'm saying it because they're the truth. So I wish you wouldn't say certain things. Couldn't disagree more, but as to your question about... You know, tell me what the truth is. The truth is that Director Halachowski is trying to apply the state statute, and he's doing it... Oh, he's surely trying hard, isn't he? Can I raise the executive order for a moment? This is why I'm mystified by this. I, Janice K. Brewer, Governor of Arizona, do hereby order and direct as follows. State agencies that provide public benefits shall conduct a full statutory rulemaking policy analysis and, to the extent not prohibited by state or federal law, initiate operational policy rule and statutory changes necessary to prevent deferred action recipients from obtaining eligibility, including driver's license. That's not an order to do that? It is not, because it leads to the agency the discretion to evaluate, to conduct a full statutory rulemaking and policy analysis. That was what Director Halachowski undertook, and all of the subsequent testimony... Anything about discretion? Well, that's implicit in the full statutory rulemaking policy analysis, that he will undergo this kind of analysis. He testified, and so did the Governor's 30B6 witness, that Director Halachowski made this decision. But didn't he say in his deposition, in fairness, didn't he say in his deposition that he felt that he was required to comply with what he understood the executive order to be, which is to not provide driver's licenses? He did not say that he felt compelled not to provide driver's licenses, no. I didn't use the word compelled, and I don't mean to suggest that, but I did read that deposition. Am I mischaracterizing it? Didn't he say that's how he understood the executive order? I do think that that is a mischaracterization, at least of the majority of his testimony. I don't know that I have anything in front of me where he quotes this, but it's in our briefs discussing the Director's more recent testimony. The other thing that's useful about this is... I also don't quite know why you think it matters so much. Yes, is that if you trace back why this ever entered the case, this question about who made the decision and what their motives were, where it leads is to the district court's decision to apply rational basis plus, because it divined a discriminatory intent in Governor Brewer, and then assumed that therefore this was like the Diaz or Romer cases that someone acted with animus to people... But she told him to do this unless there was some state or federal law that prevented it. Well, following his analysis... She ordered him to. I don't think that's an accurate characterization of this, and it certainly is not... I do hereby order and direct as follows. Yes, but what follows is please conduct an analysis, and he does. And, to the extent not prohibited by state or federal law, initiate changes necessary to deny the benefits, including the driver's license. Right. And this provided... I don't think it's ambiguous. This provided enough latitude for the director to interpret the statute as he did, and he walked through the reasons for that, which, again, I've traced at some length. The only other thing that I want to clarify... So, counsel, counsel, counsel, just to finish that thought, because you're trying to link this back to how this became raised and to the standard of review. That's right. Okay, could you just complete your thought, please? So, the lower court concluded that on its perceived animus... District court, not the lower court. I will get that right yet. The district court, the high court, concluded that the governor acted based on animus to DACA recipients, and that's why he applied rational basis plus in the first instance. Now, on remand, he drops its footnote six, I believe, where he explains that there is now a live fact issue, but then he says, because this court required more rigorous scrutiny than rational basis, he wouldn't have to go into it anyway. But that... Okay, so your point is that we should be applying rational basis? Is your point that we should apply rational basis because you think the director independently reached this conclusion? Is that it? Yes. Well, at the very least, what it does is undermine the reason for triggering rational basis plus in the first instance. Okay. Thank you. Thank you. And I think you should apply rational basis because Plyler requires it. He's a wise man because we've had a number of federal judges down there whose lives have been made miserable and even shortened, you know. So I can understand his saying there. Do you want me to give you an explanation? No, sir. I think I appreciate the reference, and that's... Yeah, you understand what I'm saying. Yeah. Could you just identify for me... Could you just identify because we didn't let you finish earlier. I asked you what's your strongest shot at rational basis, and you gave us one, but you said there were two. What's your second strongest argument? The second is the other new one, which is the consistency of application because this case concerns the 2013 DACA, I guess, rulemaking adjustment here. And that's where the director has his strongest support, and he gets it right finally by going back to cases like Barclays and Mead and saying that under federal law requires a certain type of authorization, and the policy memorandum of this type does not trigger that kind of... that force of law. And so for that reason, it was error to deny summary judgment to the defendants. Can you go back again to the cancellation and show me how it fits into that? The cancellation issue? How cancellation of removal fits into the consistency. Okay. When someone is eligible for a... Not eligible. Not eligible necessarily. Okay, yes, but has applied for cancellation of removal, they're availing themselves of something that's provided in the INA. If anything, if Arizona denied those folks, that would be a better preemption case because now you would be able to say the federal government has created this pathway for you to stay in the country, so Arizona should... How do we know that these DACA people aren't eligible, aren't going to apply for cancellation if they're ever, in fact, put into removal proceedings? Well, if they do, then they will be eligible for that because... But the point is that we're a step before that. So why are they worse off? It doesn't make any sense. Oh, it does. It does because this is rooted in federal law. That's the whole question. And whether a person is closer or further from removal from the country is not the threshold that this statute creates. Nor, by the way, does anything in federal law require a state to issue driver's licenses on the basis of whether a person is imminently on the brink of being deported or not. And so these kind of considerations, I think, are important to sort out. And you keep saying it, but I really have a hard time... At the end of the day, it comes down to authorization under federal law, and I think the Barclays and Mead decisions are a terrific guide for that. So the state respectfully requests that this court render judgment in its favor or at least remand for application of the correct standard of review or the development of a record on the constitutional issues. Thank you. Very well. Thank you. Thank you. All right. We've got... Your two minutes have now multiplied to 15, but that's all right. And no, this has been a very enlightening discussion, and we thank both of you, both sides, for your argument and for your excellent brief. Thank you very much, and we'll get to this as soon as we can. The court will recess.
judges: Pregerson, Berzon, Christen